#26115-a-LSW

**2012 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DUSTIN BEAULIEU,                                Plaintiff and Appellee,

    v.

DEANN S. BIRDSBILL,                             Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIM D. TUCKER
Judge

* * * *

KELLY J. GOSLINGA
Sioux Falls, South Dakota                       Attorney for plaintiff
                                                and appellee.


JOSEPH THRONSON of
Dakota Plains Legal Services
Sisseton, South Dakota                          Attorneys for defendant
                                                and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MAY 21, 2012

OPINION FILED **06/06/12**

#26115

WILBUR, Justice

[¶1.] The trial court granted Father's request for a change of child custody from Mother to Father. Mother appeals arguing that the trial court abused its discretion in concluding that compelling circumstances warranted the separation of siblings. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.] Deann Birdsbill and Dustin Beaulieu share one child, N.B., born December 14, 2004. Deann and Dustin never married, but lived together for approximately two years. When Deann and Dustin ended their relationship, Deann retained custody of N.B. However, Deann and Dustin did not have a court ordered custody agreement or any written custody agreement. Sometime after Deann and Dustin separated, Deann entered into a romantic relationship with Ferland Knight. Deann's relationship with Knight produced N.B.'s half-sister, A.K.

[¶3.] In March 2011, Dustin filed an action requesting the trial court to grant him custody of N.B. At trial, Dustin introduced evidence indicating that Deann was providing N.B. with an unstable environment. Dustin testified that he noticed several different males present in Deann's home on the occasions that he picked up and dropped off N.B. It is undisputed that, since her relationship with Dustin, Deann also had a short-lived marriage to Preston Freeman. Deann and Freeman's marriage was annulled six months after it took place.

[¶4.] Deann also testified that her relationship with Knight was abusive. One abusive incident resulted in the arrest of both Deann and Knight for assault. Deann and Knight were each intoxicated at the time of the incident. Two abusive

-1-

incidents resulted in trips to the emergency room. After one abusive incident, N.B. saw blood on Deann's face.

[¶5.] Several times Deann contacted Dustin for help. One time, Deann called Dustin because she was stranded at a gas station in Iowa with A.K., who was approximately six months old at the time. Deann purchased a bus ticket to Sioux Falls, where Dustin met Deann and allowed her and A.K. to stay with his family for several weeks until Deann was able to obtain financial assistance and move out on her own. Another time, Dustin drove Deann home after an altercation with another female at a bar. Upon arriving at her home, Deann exited Dustin's car, ripped a mirror off the car and threw it through his car window. Deann later pleaded guilty to vandalism.

[¶6.] In contrast, Dustin presented evidence showing that he would provide N.B. a stable environment. Dustin has resided in Flandreau for six years, where members of his family also reside. Dustin has been employed full-time with the same company for approximately four and a half years. Dustin and his partner, Kiya, both testified that they maintain a sober household, free from both drugs and alcohol.

[¶7.] The trial court granted Dustin custody reasoning that, although both parents are fit, Dustin would provide N.B. with "heightened stability." The trial court also found that the "heightened stability" Dustin would provide was a compelling reason to separate N.B. from her half-sibling A.K. In reaching this conclusion, the trial court noted that it "considered the domestic violence in [Deann's] home and the concerns with [Deann's] alcohol use." Deann appeals.

## STANDARD OF REVIEW

[¶8.]     As we recently stated in *Simunek v. Auwerter*:

> We review child custody decisions under the abuse of discretion standard of review. *Fuerstenberg v. Fuerstenberg,* 1999 S.D. 35, ¶ 22, 591 N.W.2d 798, 807 (citations omitted). "An abuse of discretion occurs in a child custody proceeding when the trial court's review of the traditional factors bearing on the best interests of the child is scant or incomplete." *Kreps v. Kreps,* 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843 (quoting *Pietrzak v. Schroeder,* 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743). "[W]e . . . uphold the trial court's findings of fact unless they are clearly erroneous." *Kreps,* 2010 S.D. 12, ¶ 25, 778 N.W.2d at 843 (citations omitted). Findings of fact are clearly erroneous when our "review of the evidence leaves . . . a definite and firm conviction that a mistake has been made." *Id.*

2011 S.D. 56, ¶ 8, 803 N.W.2d 835, 837.

## ANALYSIS AND DECISION

[¶9.]     This Court has, on several occasions, reviewed a trial court order separating siblings, including half-siblings. In doing so, this Court has "recognized and held that the best interests of the child require a showing of compelling reasons before a separation of siblings will be upheld." *Madsen v. Madsen*, 456 N.W.2d 551, 553 (S.D. 1990). However, this Court has clarified that "compelling circumstances" is not an absolute rule, and "maintaining children in the same household should never override what is in the best interests of a child." *Simunek*, 2011 S.D. 56, ¶ 10, 803 N.W.2d at 837. Thus, even when the separation of siblings is at issue, "[t]he [trial] court's review of a parent's request to change child custody is governed by the best interests of the child, considering the child's temporal, mental, and moral welfare." *Id.* ¶ 9 (citing SDCL 25-4-54; *Fuerstenberg*, 1999 S.D. 35, ¶ 22, 591 N.W.2d at 806).

[¶10.] To encourage trial courts to take a balanced and systematic approach in making custody determinations, we have articulated the following factors, which a trial court may, but is not required to, consider in determining the best interests of a child: parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, separating siblings, and substantial change of circumstances. *Id.* We have consistently stated that these factors are to be viewed as guideposts for trial courts, thus, "[a] court is not bound to make a specific finding in each category; indeed, certain elements may have no application in some cases, and for other cases there may be additional relevant considerations. In the end, our brightest beacon remains the best interests of the child." *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 13, 632 N.W.2d 48, 53.

[¶11.] In this case, the record and the trial court's decision show that two factors were primarily at issue: stability and separation of siblings. On appeal, neither party has asserted that the trial court should have weighed additional factors in determining the best interests of N.B. Rather, Deann argues that the trial court improperly determined that Dustin could provide greater stability and that this greater stability amounted to a "compelling circumstance" warranting the separation of N.B. from her sibling A.K. More specifically, Deann argues that the trial court improperly weighed three facts in reaching its conclusion: Dustin's relative economic advantage, the domestic abuse in Deann's home, and Deann's alcohol use. However, our review of the record reveals that the trial court properly weighed the appropriate evidence and factors and its findings as to each factor are

not clearly erroneous. Thus, we conclude that the trial court did not abuse its discretion in awarding custody of N.B. to Dustin.

[¶12.] First, the record does not support Deann's argument that the trial court improperly weighed Dustin's economic advantage. The trial court's findings of fact and conclusions of law do not mention Dustin's economic advantage in arriving at its conclusion that Dustin would provide a more stable environment for N.B. Rather, the trial court focused generally on stability, and more specifically, on the domestic abuse in Deann's home. Thus, we find no merit to Deann's argument that the trial court improperly relied on Dustin's relative economic advantage.

[¶13.] Second, regarding the trial court's reliance on the domestic abuse in Deann's home, Deann argues that the evidence presented at trial did not constitute a "history of domestic abuse" under SDCL 25-4-45.5. This statute provides: "In awarding custody involving a minor, the court shall consider . . . [a] history of domestic abuse" and if a "greater convincing force of the evidence" proves a history of domestic abuse, there becomes "a rebuttable presumption that awarding custody to the abusive parent is not in the best interest of the minor." *Id.*

[¶14.] Here, the trial court did not find a "history of domestic abuse" and did not apply the rebuttable presumption contained in SDCL 25-4-45.5. However, although the rebuttable presumption contained in SDCL 25-4-45.5 was not triggered, the trial court was still free to weigh the evidence presented regarding Deann's arrest for domestic abuse, her testimony regarding abusive incidents between her and Knight, the resulting trips to the emergency room, and N.B. seeing blood on Deann's face in determining what was in the best interests of N.B. Thus,

we hold that the trial court did not abuse its discretion in considering the evidence of domestic abuse.

[¶15.] Third, and finally, Deann argues that the trial court improperly considered Deann's alcohol use. Deann's argument relies on a misinterpretation of this Court's decision in *Jones v. Jones*, 423 N.W.2d 517 (S.D. 1988). In *Jones,* this Court stated, "although mother's social activity during the separation is troubling, father failed to present any evidence showing an adverse effect upon [child]." *Id.* at 519. Deann reads the forgoing language as announcing a requirement that, in order for a trial court to consider parental misconduct in awarding custody, it must be established that the conduct had an adverse effect on the child. We do not read this isolated statement in *Jones* as announcing a bright line rule that a trial court may *only* consider parental misconduct if the conduct has an adverse effect on the child. Notably, *Jones* is factually distinguishable. In *Jones*, we were weighing the misconduct of *both* mother and father. In situations where a trial court is weighing misconduct of both mother and father, it may be relevant whether one or both parties' misconduct had an adverse effect upon the child. Here, however, the trial court was only confronted with Deann's alcohol use and related misconduct.

[¶16.] In addition to this factual distinction, this Court has since stated, in making custody determinations, "it is necessary to consider the overall conduct and abilities of both the custodial and the non-custodial parent. Even if the custodial parent engages in immoral conduct, that parent may still provide better overall care for the children than the non-custodial parent." *Shoop v. Shoop*, 460 N.W.2d 721, 724 (S.D. 1990). Thus, although it would have been improper to conclude that

Deann's alcohol related misconduct alone necessitated a change in custody, it was not improper for the trial court to contrast Deann's alcohol related misconduct with Dustin's undisputed testimony that he maintains a home free from alcohol and drugs in determining the "overall conduct and abilities of both the custodial and the non-custodial parent."

## CONCLUSION

[¶17.] The trial court properly considered the relevant factors in making its custody determination and its finding that compelling reasons existed to separate A.K. from her half-sibling is not clearly erroneous. We therefore hold that the trial court did not abuse its discretion in awarding primary physical custody to Dustin and affirm its ruling.

[¶18.] Affirmed.

[¶19.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.