#26561-a-LSW

**2013 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KYLIE ROTH,                                    Plaintiff and Appellant,

v.

CHAD HAAG,                                     Defendant and Appellee.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HANSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

ROSE ANN WENDELL
Pierre, South Dakota                           Attorney for plaintiff
                                               and appellant.


MICHAEL E. UNKE
Salem, South Dakota                            Attorney for defendant
                                               and appellee.


* * * *

CONSIDERED ON BRIEFS
ON MAY 20, 2013

OPINION FILED **07/03/13**

#26561

WILBUR, Justice

[¶1.]    Kylie Roth (Mother) appeals from the trial court's order granting change of primary physical custody of child (D.L.H.) to Chad Haag (Father). We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]    Mother and Father had D.L.H. out of wedlock on July 22, 1998. Following the couple's separation when D.L.H. was an infant, Mother retained primary physical custody of D.L.H. and Father exercised his visitation rights pursuant to the South Dakota standards for noncustodial parenting time.

[¶3.]    Mother married Steven Roth (Stepfather) and had two children (Roth half-siblings) from that marriage. Mother, Stepfather, and the Roth half-siblings live in Mitchell, South Dakota. Father married Sherry Haag (Stepmother) and had four children (Haag half-siblings) from that marriage. Father, Stepmother, and the Haag half-siblings live on an acreage near Alexandria, South Dakota.

[¶4.]    In January 2009, the Department of Social Services referred the Roth family to a home-based therapy program because of Stepfather's alleged abusive behavior towards D.L.H. Victoria Fay, a mental health therapist, performed counseling in the Roth home from January 2009 through June 2009. During that time, Mother told Fay that D.L.H. was difficult to manage in the home. D.L.H. has Attention Deficit Hyperactivity Disorder and displays traits of a mood disorder. Fay noted that D.L.H. "display[ed] some very extreme behaviors of tantruming, kicking, yelling, [and] being very defiant." Fay also indicated that D.L.H. expressed difficulty in his relationships with Stepfather and with the Roth and Haag half-

-1-

siblings.  Fay determined that D.L.H. responded positively to the home-based therapy program.

[¶5.]    Mother discontinued Fay's counseling services in July 2009.  Father had not participated in the counseling sessions.  Father believed that counseling was not necessary because D.L.H. did not have any behavioral problems when D.L.H. was staying in Father and Stepmother's home.

[¶6.]    In September 2009, the Roth family resumed the home-based counseling program with Fay due to D.L.H.'s behavioral problems in their home and problems with his peers at school.  During this time, D.L.H. expressed to Fay his desire to live with Father because he wanted to develop a closer relationship with Father.  On his own, D.L.H. devised a plan where he would equally divide his time between Father and Mother.  When D.L.H. presented this plan to Mother, she rejected it.

[¶7.]    In March 2010, Mother filed a motion with the trial court and requested an order requiring Father to ensure that D.L.H. received his prescribed medication while D.L.H. was in Father's care.  Father also filed a motion requesting an increase in visitation and joint legal custody.  A hearing on the motion was held. The trial court entered an order on June 30, 2010, that required Father to ensure that D.L.H. received his prescribed medication while D.L.H. was in Father's care and Mother to make a good faith effort to take D.L.H to religion education classes.[1] The order further provided that Mother and Father have joint legal custody of

---

1.    Father, who is Catholic and attends church regularly, indicated that, while in Mother's care, D.L.H. missed several Catholic religion classes.  Mother does not practice any religion nor does she attend church.

D.L.H., with primary physical custody remaining with Mother. Father was also granted additional visitation time with D.L.H.

[¶8.]    In May 2012, Father filed a motion for change of custody with the trial court. At a hearing on September 26, 2012, Fay, Mother, Father, and Stepmother testified. Fay testified that "[a]t this point in his development, [D.L.H.] would benefit from having a strong, healthy relationship with an adult male to role model after at this point." Fay also stated that D.L.H. expressed a desire to live with Father. She further testified that both Mother and Father are good parents with both having different styles of parenting, neither of which is harmful to D.L.H. In chambers, D.L.H. expressed to the court a desire to live with Father.

[¶9.]    In its oral and written findings of fact and conclusions of law, the trial court conducted a detailed analysis of the applicable *Fuerstenberg* factors. *See Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, 591 N.W.2d 798.[2] In balancing all of the applicable *Fuerstenberg* factors, the trial court determined that it was in D.L.H.'s best interests that Father have primary physical custody.

[¶10.]    Mother appeals from the trial court's order granting change of primary physical custody of D.L.H. to Father. Mother and Father filed motions with this Court, each requesting appellate attorney fees pursuant to SDCL 15-26A-87.3.

---

2.    The trial court determined that because there had been no prior court determination of D.L.H.'s best interests, a showing of a substantial change in circumstances as a basis for change of custody was not required. *See* Conclusion of Law 4 (stating that "[t]here was . . . an order in 2010 that came on as a result of a hearing before the [c]ourt, but not a [c]ourt determination").

**STANDARD OF REVIEW**

[¶11.]     We review "child custody decisions under the abuse of discretion standard of review." *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 13, 826 N.W.2d 627, 633 (quoting *Simunek v. Auwerter*, 2011 S.D. 56, ¶ 8, 803 N.W.2d 835, 837). "An abuse of discretion is a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* ¶ 14 (quoting *Hill v. Hill*, 2009 S.D. 18, ¶ 5, 763 N.W.2d 818, 822). "In the context of reviewing custody decisions, 'an abuse of discretion occurs . . . when the trial court's review of the traditional factors bearing on the best interests of the child is scant or incomplete.'" *Id.* (alteration in original) (quoting *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843).

**ANALYSIS AND DECISION**

[¶12.]     In this appeal, Mother disputes the trial court's application of two of the *Fuerstenberg* factors: stability and separating siblings. Specifically, she argues, among other things, that a change in primary physical custody is not necessary when Father could have weekly visitation with D.L.H. because of the close proximity of the Roth and Haag homes; D.L.H. has more consistency in Mother's home where D.L.H will have access to counseling services; Father has not participated in counseling services; and Mother has provided for D.L.H.'s physical, emotional, and mental needs since birth, including his medical needs. Mother also contends that Father does not participate in parent-teacher conferences nor does Father know D.L.H.'s classroom teacher. Additionally, Mother asserts that compelling reasons do not exist to separate D.L.H. from his Roth half-siblings, whom D.L.H. has grown up with to date.

[¶13.]     "When determining custody, 'the court shall be guided by consideration of what appears to be for the best interests of the child in respect to the child's temporal and mental and moral welfare.'" *Id.* ¶ 17 (quoting SDCL 25-4-45). "The trial court may, but is not required to, consider the following *Fuerstenberg* factors in determining the best interests and welfare of the child: parental fitness, stability, primary caretaker, child's preference, harmful parental misconduct, separating siblings, and substantial change of circumstances." *Id.* (quoting *Simunek*, 2011 S.D. 56, ¶ 9, 803 N.W.2d at 837). "We encourage trial courts to take a balanced and systematic approach when applying the factors relevant to a child custody proceeding." *Id.* ¶ 18 (quoting *Simunek*, 2011 S.D. 56, ¶ 9, 803 N.W.2d at 837). However, "a court is not bound to make a specific finding in each category; indeed, certain elements may have no application in some cases, and for other cases there may be additional relevant considerations. In the end, our brightest beacon remains the best interests of the child." *Beaulieu v. Birdsbill*, 2012 S.D. 45, ¶ 10, 815 N.W.2d 569, 572 (quoting *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 13, 632 N.W.2d 48, 53).

[¶14.]     Courts examine the following subfactors when considering stability:

> (1) the relationship and interaction of the child with the parents, step-parents, siblings and extended families; (2) the child's adjustment to home, school and community; (3) the parent with whom the child has formed a closer attachment, as attachment between parent and child is an important developmental phenomena and breaking a healthy attachment can cause detriment; and (4) continuity, because when a child has been in one custodial setting for a long time pursuant to court order or by agreement, a court ought to be reluctant to make a change if only a theoretical or slight advantage for the child might be gained.

*Schieffer*, 2013 S.D. 11, ¶ 17, 826 N.W.2d at 634 (quoting *Price v. Price*, 2000 S.D. 64, ¶ 27, 611 N.W.2d 425, 432). "In these circumstances, the court should discern a distinct need to remove a child from one setting and a reason to place the child in a new one." *Fuerstenberg*, 1999 S.D. 35, ¶ 26, 591 N.W.2d at 808.

[¶15.] In addition, "siblings and half-siblings 'should not be separated absent compelling circumstances.'" *Simunek*, 2011 S.D. 56, ¶ 10, 803 N.W.2d at 837 (quoting *Fuerstenberg*, 1999 S.D. 35, ¶ 32, 591 N.W.2d at 809). "However, this is not an absolute rule, and 'maintaining children in the same household should never override' what is in the best interests of a child." *Id.* (quoting *Fuerstenberg*, 1999 S.D. 35, ¶ 32, 591 N.W.2d at 809). "Separating siblings is 'one of several factors courts consider in determining the best interests of the children.'" *Id.* (quoting *Hathaway v. Bergheim*, 2002 S.D. 78, ¶ 32, 648 N.W.2d 349, 354 (Gilbertson, C.J., dissenting)).

[¶16.] The record demonstrates that in making its best interests determination, the trial court made detailed oral findings of fact and conclusions of law analyzing the applicable *Fuerstenberg* factors. The court subsequently entered 25 pages of equally detailed written findings of fact and conclusions of law. In doing so, the court analyzed D.L.H.'s age, maturity, and intelligence; D.L.H.'s preference; primary caretaker; separation of siblings; stability; and the parental fitness of Mother and Father.

[¶17.] In its analysis of the stability factor, the trial court considered that D.L.H., at 14 years old, had expressed a desire to have a more intimate relationship with Father. Father also expressed a desire for this relationship. Furthermore, the

court relied on Fay's report and testimony in discerning a distinct need to change the physical custody arrangement, in particular, that D.L.H. "is reaching a crucial point in his development where exposure to a male that is emotionally vested in his life will enhance his ability to feel a sense of belonging among the male gender and develop a stronger sense of independence through the acceptance that only a positive male role model[']s understanding can provide." D.L.H. "explained [to Fay] that as a young male approaching his teen years he ha[d] developed a desire to reside with his father." The court noted that it was "not just [D.L.H.'s] exposure to any male individual, but to his father that [D.L.H.] does desire to have."

[¶18.] Moreover, the court recognized that D.L.H. had expressed difficulty in his relationships with Stepfather and both of the Roth and Haag half-siblings. And, while D.L.H. has attended school in Mitchell for all of his school years, D.L.H. has been in the Alexandria community when he visits Father and has two cousins of the same age who attend school in Alexandria.

[¶19.] As to separation of siblings, the trial court noted that D.L.H. has two half-siblings in the Roth home and four half-siblings in the Haag home. Accordingly, the trial court considered this factor to be equal between Father and Mother. Maintaining the status quo—D.L.H. and the Roth half-siblings living together in the same household—is not an absolute rule and this arrangement should not override what is in the best interest of D.L.H.

[¶20.] From a review of the record, the trial court engaged in a balanced and detailed analysis of the applicable factors bearing on the best interests determination. This analysis was anything but "scant or incomplete." *Schieffer,*

2013 S.D. 11, ¶ 14, 826 N.W.2d at 633 (quoting *Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d at 843). Therefore, based on its balanced and thorough analysis of the applicable *Fuerstenberg* factors, the trial court did not abuse its discretion in determining that it was in the best interests of D.L.H. for Father to have primary physical custody.

[¶21.] Both parties submitted motions for appellate attorney fees to this Court. The motions were accompanied by itemized and verified statements of the attorney fees incurred pursuant to SDCL 15-26A-87.3. "Attorney fees are allowable in domestic relation cases, 'considering the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case.'" *Hogen v. Pifer*, 2008 S.D. 96, ¶ 16, 757 N.W.2d 160, 165 (quoting *Barnes v. Matzner*, 2003 S.D. 42, ¶ 24, 661 N.W.2d 372, 379). "We also 'examine the fee request from the perspective of whether the party's appellate arguments carried any merit.'" *Id.* (quoting *Arneson v. Arneson*, 2003 S.D. 125, ¶ 38, 670 N.W.2d 904, 917). The record indicates that Father owns a vehicle with a debt of $10,000; however, the record does not reveal any assets owned by Mother. In addition, the record provides that Mother earns a gross monthly income of $1,776 and Father earns $4,708 and pays unreimbursed union dues of $282. Mother does not argue that Father unreasonably increased the time spent on the case. Yet, Father argues that Mother's lack of cooperation increased the time spent on this case. He asserts that the parties agreed that Fay would conduct an independent custody evaluation. And, after Fay determined that it was in the best interests of D.L.H. that primary physical custody be with Father, Mother would not

honor the agreement, which caused additional work on this case. The record, however, does not contain any reference to the agreement upon which Father based his request. Additionally, as the trial court recognized, this is a close case that involves two fit parents. Thus, considering the relative financial condition of the parties, the good faith arguments, and the closeness of the case, both parties' motions for appellate attorney fees are denied.

## CONCLUSION

[¶22.]    Based on its balanced and thorough analysis of the applicable *Fuerstenberg* factors, the trial court did not abuse its discretion in determining that it was in the best interests of D.L.H. for Father to have primary physical custody. The parties' individual requests for appellate attorney fees are denied.

[¶23.]    Affirmed.

[¶24.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and SEVERSON, Justices, concur.