#27991-a-DG
**2017 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MELISSA M. MOULTON,                           Plaintiff and Appellant,

          v.

JACK W. MOULTON,                              Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN PEKAS
Judge

\* \* \* \*

RICK L. RAMSTAD of
Crew and Crew, PC
Sioux Falls, South Dakota                     Attorneys for plaintiff and
                                              appellant.


GREGORY T. BREWERS of
Strange, Farrell, Johnson
 & Brewers, PC
Sioux Falls, South Dakota                     Attorneys for defendant and
                                              appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **11/08/17**

#27991

GILBERTSON, Chief Justice

[¶1.]     Jack W. Moulton and Melissa M. Moulton divorced.  By stipulation, the parties agreed to share legal custody of their two children, Marissa and Adam, with Jack having primary physical custody of Adam and Melissa having primary physical custody of Marissa.  Melissa subsequently moved for a change of custody, seeking primary physical custody of Adam.  The circuit court denied the motion, and Melissa appeals.  We affirm.

## Facts and Procedural History

[¶2.]     Jack and Melissa married in 2005.  The marriage was Jack's third and Melissa's second.  In 2009, Jack and Melissa separated, each suspecting the other of infidelity.  The circuit court entered a judgment and decree of divorce on June 21, 2011, on the grounds of irreconcilable differences.  At the time, the parties stipulated that they would share legal custody of their two children, Marissa and Adam,[1] and that Jack would have the children in his care two overnights per week.  After his divorce from Melissa, Jack remarried his first wife, Dawn.  At the time of the proceedings below, Melissa had not remarried but cohabited with her boyfriend, Jeff.

[¶3.]     In 2013, Melissa, who was employed as a financial advisor, accepted a job transfer that required her to relocate immediately to Williston, North Dakota,

---

1.     Marissa is the biological child of Melissa and the adopted child of Jack. Adam is the biological child of both Melissa and Jack.  Jack also has three other biological children from his previous marriages.

but provided a substantial financial incentive.[2]  In order to avoid litigation, the parties agreed to modify the custody arrangement.  The parties stipulated that they would share legal custody of Marissa and Adam, that Jack would have primary physical custody of Adam, and that Melissa would have primary physical custody of Marissa.  The circuit court approved the modification on August 27, 2013.

[¶4.]        On October 22, 2014, Melissa filed a motion for temporary physical custody of Adam after he suffered an asthmatic episode.  Citing Jack's long-standing smoking habit, Melissa argued Adam's health was imperiled by continuing to reside with Jack.  The circuit court did not order a custody evaluation, but Melissa commissioned one herself, which concluded Melissa should be given physical custody of Adam.  After hearing testimony and argument on August 5, 2015, and February 9 and 10, 2016, the court entered findings of fact and conclusions of law and denied Melissa's motion.  The court also ordered Melissa to pay $15,120 of Jack's attorney fees.

[¶5.]        Melissa appeals, raising the following issues:

1.    Whether the circuit court erred in determining Adam's interests were better served by remaining in Jack's physical custody.

2.    Whether the circuit court abused its discretion by ordering Melissa to pay Jack's attorney fees.

**Standard of Review**

[¶6.]        "A circuit court's determination of what constitutes a particular child's best interest is a finding of fact," which this Court reviews under the clearly

---

2.    Melissa testified the transfer provided a 15% increase in salary and a $40,000 moving bonus.  She also testified that her new income was approximately $150,000 annually.

erroneous standard. *People ex rel. E.M.H.*, 2015 S.D. 101, ¶ 5, 873 N.W.2d 485, 486.

This Court will accept the circuit court's factual findings unless after a complete

review of the record, the Court is left "with a definite and firm conviction that a

mistake has been made." *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333,

336 (quoting *Clough v. Nez*, 2008 S.D. 125, ¶ 8, 759 N.W.2d 297, 301). The circuit

court's decision to award attorney fees is reviewed for an abuse of discretion. *Hewitt*

*v. Felderman*, 2013 S.D. 91, ¶ 23, 841 N.W.2d 258, 264.

## Analysis and Decision

[¶7.]      ***1.     Whether the circuit court erred in determining Adam's interests were better served by remaining in Jack's physical custody.***

[¶8.]      Melissa's primary argument is that the circuit court erred in

determining Adam's interests were better served by remaining in Jack's custody. In

particular, Melissa contends Jack's smoking places Adam's health at risk. She also

contends the court failed to identify compelling circumstances justifying the

separation of Marissa and Adam. And finally, she contends her custody evaluation

supports her claim for a change in custody.

[¶9.]      In making custody decisions, a court's "brightest beacon" is the best

interest of the child. *McCarty v. McCarty*, 2015 S.D. 59, ¶ 12, 867 N.W.2d 355, 359.

"In awarding the custody of a child, the court shall be guided by consideration of

what appears to be for the best interests of the child in respect to the child's

temporal and mental and moral welfare." SDCL 25-4-45. In making such

determination, a "court may, but is not required to, consider the following . . .

factors . . . : parental fitness, stability, primary caretaker, [the child's] preference,

harmful parental misconduct, separating siblings, and substantial change of

circumstances." *McCarty*, 2015 S.D. 59, ¶ 12, 867 N.W.2d at 359 (quoting *Roth v. Haag*, 2013 S.D. 48, ¶ 13, 834 N.W.2d 337, 340). Not all of these factors are applicable in every case, and so "a court is not bound to make a specific finding in each category[.]" *Id.* (quoting *Roth*, 2013 S.D. 48, ¶ 13, 834 N.W.2d at 340).

***Substantial Change of Circumstances***

[¶10.]    "It has long been the rule in South Dakota that to modify a custody decree rendered after a *contested hearing*, the moving party must show a substantial change in circumstances." *Id.* ¶ 9, 867 N.W.2d at 358 (emphasis added). "The reason behind [this rule] is to prevent *relitigation* of conduct and circumstances that antedate the prior custody order." *Kolb v. Kolb*, 324 N.W.2d 279, 282 (S.D. 1982). Thus, the rule applies when "such conduct has been *litigated* and . . . a court has entered a judgment based on that conduct." *Id.* (emphasis added). However,

> facts pertinent to child custody, which were not put in issue or involved, tried and determined by the court as a basis for the original divorce decree, are not res judicata *as to the best interests of the children* . . . and may be considered anew in a subsequent custody modification hearing free from the substantial change of circumstances constraints.

*Id.* at 283 (emphasis added). As noted above, the custody arrangement existing at the time of Melissa's motion for physical custody was the product of the parties' stipulation; the question of Adam's best interest was not litigated prior to the present action. Therefore, the substantial-change-of-circumstances limitation is not applicable.

*Parental Fitness*

[¶11.]     In analyzing the fitness of a parent, the circuit court may consider a number of factors, including:

> (1) mental and physical health; (2) capacity and disposition to provide the child[] with protection, food, clothing, medical care, and other basic needs; (3) ability to give the child[] love, affection, guidance, education and to impart the family's religion or creed; (4) willingness to maturely encourage and provide frequent and meaningful contact between the child[] and the other parent; (5) commitment to prepare the child[] for responsible adulthood, as well as to insure that the child experiences a fulfilling childhood; and (6) exemplary modeling so that the child[] witness[es] firsthand what it means to be a good parent, a loving spouse, and a responsible citizen.

*McCarty*, 2015 S.D. 59, ¶ 13, 867 N.W.2d at 359-60 (quoting *Schieffer v. Schieffer*, 2013 S.D. 11, ¶ 17, 826 N.W.2d 627, 634).  Concerning Adam, the court found that Jack and Melissa are equally fit in regard to factors (1), (2), (3), and (5).

[¶12.]     In regard to the parties' willingness to encourage contact with the noncustodial parent, the circuit court found that "Jack has been very supportive of the relationship between Melissa and Adam, and Melissa has been able to spend substantial time with Adam despite the distance between the parents' homes."  The court did not make a similar finding regarding Melissa's willingness to encourage and facilitate contact between Adam and Jack.  However, it did note that "Melissa has not been supportive of Jack's relationship with Marissa."  Thus, the court found that "[t]he factors related to willingness to maturely encourage and provide frequent and meaningful contact between the child and the other parent favor Jack over Melissa."

[¶13.]     The circuit court also determined that factor (6) did not support changing custody.  The court found that "Jack and Dawn seem to model firsthand

what it means to be good parents and loving spouses." In contrast, the court found that "Melissa has not demonstrated exemplary modeling in terms of romantic relationships." The parties included the following provision in their custody agreement:

> The parties also agree that, when the children are present, neither of them shall have as a guest, nor shall be a guest, between 10 p.m. and 8 a.m., of any person with whom the parent has a sexual relationship, unless the parent and the other person are legally married.

This provision was incorporated into the judgment and decree of divorce. On cross-examination, Melissa admitted she violated this provision. The court found:

> Melissa was not forthcoming regarding the nature of her relationship with Jeff, or the fact that he is currently residing with Melissa and Marissa. Melissa's testimony regarding Jeff was deceptive and called into question the true circumstances related to her life in North Dakota. The court questions her credibility as a result of the deceptive or evasive testimony in that regard. The court is also very concerned about the fact that she willfully and blatantly disregarded the court order restricting either party from cohabitation with someone to whom the party is not married.

Additionally, the court was "concerned about the fact that [Melissa] willfully and blatantly disregarded the court order." Indeed, disregarding a court order is not "exemplary modeling [of] what it means to be . . . a responsible citizen." *Id.* ¶ 13, 867 N.W.2d at 360 (quoting *Schieffer*, 2013 S.D. 11, ¶ 17, 826 N.W.2d at 634). Thus, this factor militates against changing custody.

***Stability***

[¶14.]     In analyzing the stability of one custody arrangement over another, the circuit court should consider:

> (1) the relationship and interaction of the child[] with the parents, step-parents, siblings and extended families; (2) the

child['s] adjustment to home, school and community; (3) the parent with whom the [child has] formed a closer attachment . . . ; and (4) continuity, because when [a child has] been in one custodial setting for a long time pursuant to court order or by agreement, a court ought to be reluctant to make a change if only a theoretical or slight advantage for the child[] might be gained.

*Id.* ¶ 17, 867 N.W.2d at 361 (quoting *Roth*, 2013 S.D. 48, ¶ 14, 834 N.W.2d at 340).

[¶15.] The circuit court found that Adam "has a close bonded relationship with both parents" and that "Adam [also] has a strong and loving relationship with his stepmother Dawn." The court also found that none of Adam's extended family resides in North Dakota; instead, they are located near Sioux Falls and Presho, South Dakota, as well as in Marshall, Minnesota, and Nebraska. Moreover, the court found that Adam "only knows Sioux Falls as his home, and has a stable home and school enrollment in Sioux Falls." Thus, as the court noted: "Living in North Dakota would be a new experience for Adam, with a new school, new friends, no extended family in the area, and no continuity with the life he has come to know." The court was also particularly concerned with the lack of information regarding Melissa's live-in boyfriend, whose presence had not even been disclosed to the custody evaluator. Thus, this factor also weighs against changing custody.

### *Primary Caretaker*

[¶16.] The circuit court found that "Jack has been Adam's primary care provider since Melissa moved to North Dakota."

### *Child's Preference*

[¶17.] The circuit court found that "Adam is not of a sufficient age or maturity to express a meaningful preference related to where he lives."

### *Parental Misconduct*

[¶18.] The circuit court's findings on this factor also favor Jack's continued custody. Regarding Jack, the court found: "Jack has not engaged in any demonstrable misconduct of concern to the court. Jack's smoking is not exemplary, but does not rise to the level of marital or parental misconduct." The court also found credible Jack's pledge "to stop smoking, especially in Adam's immediate presence." Regarding Melissa, the court again expressed concern over her violation of the court order against cohabiting. The court found: "Melissa's violations of the court order restricting overnight guests of the opposite sex is akin to marital misconduct and is concerning to the court. These violations were done in the presence of the children."

[¶19.] Even so, Melissa contends that her conduct should not be considered unless it has a demonstrable effect on Adam. "Where there is no evidence that a parent's marital misconduct has a harmful effect on a child, it should not be taken into account in awarding custody." *Fuerstenberg v. Fuerstenberg*, 1999 S.D. 35, ¶ 31, 591 N.W.2d 798, 809. However, the "harmful effect is self-evident when parental misconduct is committed in the presence of a child old enough to perceive the misconduct." *Id.* In *Fuerstenberg*, the harm of a mother "permit[ing] her boyfriend to stay at her home overnight" was self-evident to a boy who like Adam, was nine years old. *See id.* So at the very least, this factor does not support a change in custody.

### *Separating Siblings*

[¶20.]     Our cases have long emphasized the importance of preserving the relationship between siblings.  *See, e.g.*, *E.M.H.*, 2015 S.D. 101, ¶ 10, 873 N.W.2d at 489-90.  However, this is one factor among several, and "'maintaining children in the same household should never override' what is in the best interests of a child." *McCarty*, 2015 S.D. 59, ¶ 24, 867 N.W.2d at 362 (quoting *Simunek v. Auwerter*, 2011 S.D. 56, ¶ 10, 803 N.W.2d 835, 837).  As the circuit court correctly noted, this case does not involve keeping children together in the same household.  Marissa and Adam have lived in separate households since 2013.  The court found that despite their situation, "[b]oth children have a good relationship with each other." The court also found that "[b]oth children seem to be doing well in their respective living arrangements."  Thus, this factor does not support a change in custody.

### *Best Interest of the Child*

[¶21.]     After analyzing the foregoing factors, the circuit court concluded, "based upon the totality of the evidence[,] that Adam's best interests are served by remaining in the primary care of Jack during the school year, and Marissa's best interests are served by staying in Melissa's primary care during the school year." The court reiterated: "The court does not believe it would be in Adam's best interests for him to move to Williston, North Dakota, during the school year." These findings are supported by the factors discussed above.  Based on the court's findings, the parental-fitness, primary-caretaker, and (especially) stability factors all weigh in favor of maintaining Jack's physical custody of Adam.  In contrast, none of the above factors supports a change in custody.

[¶22.] Melissa has the burden of establishing the court's best-interest finding was clearly erroneous. *E.M.H.*, 2015 S.D. 101, ¶ 5, 873 N.W.2d at 486. The circuit court entered findings explaining its rejection of the custody evaluator's recommendation.[3] Melissa's remaining arguments amount to little more than an attempt to relitigate this case. And even if one or more of the court's individual findings were clearly erroneous, the foregoing factors must be viewed together. *See McCarty*, 2015 S.D. 59, ¶ 24, 867 N.W.2d at 362. Based on these factors and the court's relevant findings, the court's best-interest finding is not clearly erroneous, and the court's decision to deny Melissa's request to modify the parties' existing custody agreement was not an abuse of discretion.

[¶23.] **2.** ***Whether the circuit court abused its discretion by ordering Melissa to pay Jack's attorney fees.***

[¶24.] Next, Melissa argues the circuit court erred in ordering her to pay Jack $15,120 in attorney fees and costs. A circuit court may award attorney fees in custody cases "if appropriate" and "in the interests of justice." SDCL 15-17-38. The court's decision on this matter is reviewed for an abuse of discretion. *See Brosnan v. Brosnan*, 2013 S.D. 81, ¶¶ 39-40, 840 N.W.2d 240, 252-53. The court must first determine whether the amount requested is reasonable in light of the circumstances

---

3. The circuit court found:

> The court places little weight upon the custody evaluation . . . .
> The evaluation appears to have been very unbalanced. Jack's
> input and the input of his references, his wife, and the concerns
> he raised about Melissa seem to have been ignored or given
> insufficient consideration during the evaluation process. The
> evaluation also seems to reach conclusions not supported by
> weight of the trial evidence.

The court was not required "to adhere to the recommendations in [the]
custody evaluation." *Kreps v. Kreps*, 2010 S.D. 12, ¶ 34, 778 N.W.2d 835, 845.

of the case.  *Id.* ¶ 39, 840 N.W.2d at 252-53.  The court must then decide whether to award some or all of that amount to the requesting party by considering "the property owned by each of the parties, their relative incomes, whether the property is in liquid or fixed assets, and whether the actions of a party unreasonably increased the time spent on the case."  *Voelker v. Voelker*, 520 N.W.2d 903, 908 (S.D. 1994).

[¶25.]     The circuit court found Jack's requested attorney fees to be reasonable. The court based this finding on its personal knowledge of the attorneys involved and its past experiences involving custody cases.  The court also found that "Melissa has substantially more income and financial resources compared to Jack."  More importantly, the court found that "[t]his case was likely to have been a very significant financial burden upon Jack, a fact known to Melissa when pursuing the issues."  Melissa has not challenged these findings as clearly erroneous.  In light of these findings, the court did not abuse its discretion in ordering Melissa to pay Jack's attorney fees.

## Conclusion

[¶26.]     The circuit court found it was in Adam's best interest to remain in Jack's physical custody.  This finding is supported by numerous other findings addressing the applicable factors for consideration in determining a request for change of custody.  Based on these findings, the court did not abuse its discretion by denying Melissa's motion for temporary physical custody.

[¶27.]     We affirm.  Jack's request for appellate attorney fees is denied.

#27991

[¶28.]     ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired

Justice, concur.

[¶29.]     JENSEN, Justice, not having been a member of the Court at the time

this action was submitted to the Court, did not participate.